UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 06 CR 911(WHP)

DERRILYN NEEDHAM,

Defendant. Sentencing

------------------------------x

New York, N.Y.
December 12, 2019
3:15 p.m.

Before:

HON. WILLIAM H. PAULEY III,

District Judge

APPEARANCES

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
BY: LAURIE KORENBAUM
Assistant United States Attorney

DAVID STERN, ESQ.
Attorney for Defendant

FEDERAL DEFENDERS OF NEW YORK
Attorneys for Defendant
JASON SER

(Case called)

THE COURT: Good afternoon. Please be seated.

THE DEPUTY CLERK: Appearances.

MS. KORENBAUM: Good after afternoon, your Honor. Laurie Korenbaum for the government.

THE COURT: Good afternoon, Ms. Korenbaum.

MR. STERN: Good afternoon. David Stern for Ms. Needham.

MR. SER: Good afternoon, your Honor. Certify for Ms. Needham.

THE COURT: I note the presence of Ms. Needham at counsel table.

This matter is once again on for resentencing. Are the parties ready to proceed?

MS. KORENBAUM: The government is ready, your Honor.

MR. STERN: We are.

THE COURT: Mr. Stern and Mr. Ser, you reviewed with your client the supplemental presentence report?

MR. STERN: We have.

THE COURT: Once again are there any factual matters in the report that you believe warrant modification or correction?

MR. STERN: There are no factual corrections that we think need correction.

THE COURT: Ms. Korenbaum, are there any factual

matters in the report that the government believes warrant modification or correction?

MS. KORENBAUM: No, your Honor.

THE COURT: Now, I have received the submissions of the parties.

First, does the government have a motion here?

MS. KORENBAUM: Your Honor, I discussed this with defense counsel before and we think the government may need to renew its motion under Section 5K1.1 and 18 U.S.C. 3553(e), which were the motions that was made at the original sentencing. To the extent that is necessary, we do that now. We also have a motion that the defendant be resentenced under the other counts of conviction, not including the gun count.

THE COURT: Is the government moving to vacate Count 14?

MS. KORENBAUM: Yes, your Honor.

THE COURT: Mr. Stern or Mr. Ser, do either of you wish to be heard?

MR. STERN: Yes, I do.

THE COURT: If you would take the podium.

MR. STERN: Okay.

THE COURT: Thank you.

MR. STERN: Judge, we think there may have been two gun counts that may have been vacated, not one, but we're not sure. I am not sure it makes any principle difference anyway,

Judge, so I will go ahead. If we think there is something to be added on that subject, we will.

THE COURT: All right.

MR. STERN: Judge, after she was last before you for sentencing, Ms. Needham had no reason to ever think she would see you again. That is, it seemed like the final sentencing for her. At that time you had concerns about her behavior in jail. That is what drove your sentence and appropriately so. When she got back to jail where she has now been for 16 years, her behavior really changed. I think you know from our submission that she stopped doing the things you said she shouldn't do and began to do almost exclusively productive things, and that was purely a personal decision.

We sometimes say about clients they are doing this or that because they know they will be in front of a judge one day and that judge, he or she, will take into consideration their behavior; but that wasn't the case with her. She had no reason to think she would ever be here again and yet she did all the things you had wished she had done in the first place. That is, she took courses to improve herself. She worked hard in various jobs. She has an exemplary work history. She did something that many of my clients can't. She kept contact with her family and friends which is a real accomplishment from jail. Lots of people get beaten downs and their friends and family people drift away, but that didn't happen to her as you

know from the letters we provided you with.

Maybe most strikingly in her case she was a productive and positive member of the prison community. You have letters from other young women whom she not only nurtured but who she encouraged not to be like her to whom she said things like, *Look what happened to me. Don't let this happen to you. Go home, be a law-abiding citizen, and do what you are supposed to.* She also looked to the future. She began to be a religious person. She began to think about what work she would do when she got out of jail, whenever that might be. All of that was done on her own. That is because she thought that is what she should do.

I've known her now for 16 years, which is shocking to say but true. I've began representing her 16 years ago. I was 49 then and she was 36. Some measure of how much our lives changed in 16 years is that my son was a child then and he is now a lawyer. She was a young, tough criminal who made a decision through her cooperation to leave that life of crime behind. Now she is a middle-aged woman seeking a chance to spend her remaining years, and I hope there are many, with her family and forging her way in the world legally.

All the goals of putting her in jail have been fulfilled. She has been punished not only in ways that were intended, that is, the loss of her freedom; but in ways that were never intended or contemplated and that is by being

sexually violated by one of the people who were supposed to not only keep her in jail but to keep her safe. She's missed the birth of her grandchildren and the adulthood of her children and has watched her mothers and aunts grow old without being able to help them. That is by any measure severe punishment.

To the extent her sentencing sent a message, anyone who knows what happened to her has been educated in two ways. First anyone who contemplates following a criminal path will think twice. They will know that she lost the sweetest and most productive years of her life to crime; but a second message has been sent and that is if you engage in crime and then cooperate, there is a benefit. They will hear although she did some truly horrible things, she renounced that life and did what she could to working by atone to testifying. As a result she was given by you a second chance at life.

She is rehabilitated. We sometimes lose sight of that and we think we're just punishing people. She is in fact by some miracle rehabilitated. There is no question that she wasn't a perfect prisoner to begin with, but she has reached a place in life now where she prides herself on honest work, doing a good job and staying out of trouble. I think the most telling thing is her evaluation from just before she was brought back to New York in October -- and we made that part the sentencing package, but if I may I want to read the last line of it in which her supervisor or corrections person says:

*In closing I would like to restate my strong support for Ms. Needham's application to any role as she was kind, professional and extremely knowledgeable in this department. I am confident that she will surpass your expectations in this new role. Ms. Needham is driven, self-confident, proactively helpful and smart and I know that she will continue to find success with all she does.*

And I think it is fair to say having been a lawyer for quite a while that I have never gotten a letter from a prison with that kind of glowing recommendation.

Derrilyn and I have had lots of conversions over the years and I don't think it violates the attorney-client privilege to say that she has told me not knowing that she would be resentenced how deeply she regrets the things she did that brought her here. Not because she ended up here, but because of the pain she caused others. She can barely recognize the person she was then and has reinvented herself as a different and better person. That is what jail is for in the end, so that people learn the wrongfulness of their acts and change. She has done that and more and I hope has earned a sentence to the equivalent of time-severed. In this case that would be 97 months and that is what we ask your Honor to impose.

THE COURT: In your submission to the Court, you refer

to the possibility that she may be deported upon the completion of her sentence.

Is there a detainer lodged against her?

MR. STERN: There is a detainer. We're trying to figure out what to do about it because we think she will be at great risk if she goes back to Jamaica. The answer is in all likelihood she will be deported.

THE COURT: All right. Thank you.

MR. STERN: Anything else, your Honor?

THE COURT: No.

MR. STERN: Thank you.

THE COURT: Ms. Korenbaum.

MS. KORENBAUM: Your Honor, the government takes no position as to how the Court will exercise its discretion in this matter. Unless you have questions for me, your Honor.

THE COURT: Has the government taken any position with respect to her potential deportation upon the completion of any sentence?

MS. KORENBAUM: We've taken no steps and had no discussions, your Honor.

THE COURT: Ms. Korenbaum, are there any victims present in the Court who wish to address the Court?

MS. KORENBAUM: No, your Honor. The victims in this case we haven't been able to contact. It has been many years as you know since they were in your courtroom before.

THE COURT: Mr. Stern, does your client wish to address the Court before sentence is imposed?

MR. STERN: She would like to, your Honor.

THE COURT: She can remain seated. Just pull the microphone to her.

THE DEFENDANT: I just want to -- I just want to apologize to everyone who are victimized by my actions. I have changed and I just want a chance to prove I have changed. I have turned my life around and it is something that I wanted to do. Because what you said to me at sentencing, it stayed with me. I slept with it and I woke with it, because I know it was true. The words that you used to describe me I looked into myself and I realized, you know what, he is right and I have to change. And I have done everything that I can because I really, really wanted to live a different life and be a different person.

Today I just don't -- I am a different person. I am the not the person. I don't care how I started out, I want to finish well. I really, really want to give back to society everything that I took from it. I just -- I am asking you to just believe in me this one last time, that I am going to make right everything that I made wrong. And I just am so sorry and I just ask for forgiveness.

THE COURT: The defendant, Derrilyn Needham, comes back before this Court once again for resentencing, this time

in view of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019).

This Court has rereviewed the presentence report and the supplemental report as well as the submissions of the parties. I adopt the findings of fact in the presentence report as my own and once again will cause the supplemental report to be docketed and filed under seal as part of the record in this case.

The Section 924(c) count of conviction in this case was predicated on Ms. Needham's participation in a conspiracy to commit Hobbs Act robbery. The parties agree that Ms. Needham's conviction on this count must be vacated because a conspiracy to commit Hobbs Act robbery qualifies as a crime of violence under 18, U.S.C., Section 924(c)(3) only under the residual or risk of force clause of that statute, which has been declared unconstitutionally vague.

Now, in preparing for this resentencing today, I've reviewed as I said the supplemental presentence report filed on October 17, 2019; the submissions of the parties; the transcript of the original sentencing of December 14, 2012; the resentencing that occurred on March 29, 2017, as a consequence of the government's Rule 35 application; and all the papers previously submitted in connection with those proceedings.

This review rekindles this Court's memories of the gripping evidence at trial in this case and the poignant

statements from victims at the original sentencing. As I observed at the resentencing more than three years ago, I had vivid memories about this case then and I have vivid memories about this case now. The resentencing in March of 2017 stemmed from a heinous crime committed against Ms. Needham while she was in the custody and care of the Bureau of Prisons. The criminal justice system could not ever have intended for her to suffer at the hands of her jailer. The Rule 35 resentencing in March 2017 dramatically reduced the length of Ms. Needham's sentence. This resentencing is precipitated by the *Davis* decision, which involves a wholly different calculus.

First, *Davis* has no affect on the guidelines calculation for indictments 04 CR 196 and 04 CR 1036. This Court previously resentenced Ms. Needham on those indictment numbers to 120 months of imprisonment to run concurrently and to be followed by three years of supervised release also to run concurrently with each other and subject to the standard conditions of supervised release and certain special conditions that I need not describe here.

Turning to Docket No. 06 CR 911, Ms. Needham pled guilty to 16 counts. One of those counts, Count 14, the use of a firearm during a crime of violence under 18, U.S.C., Section 924(c) is the reason why we're here today and her conviction on that count is vacated. Revisiting the guideline calculations as I described them at the December 14, 2012, sentencing, the

crime of conspiracy to commit Hobbs Act robbery and the substantive robberies at Ely Avenue in July of 2002; Baychester Avenue in September of 2002; Prince George's County, Maryland, in September of 2002; Cross Avenue in February of 2003; Rosedale Heights in May of 2003; and Holland Avenue in May of 2003 are grouped together as Group 1. The base offense level for Group 1 is 20. Because it involved the possession of a firearm by an accomplice, five levels are added. Because there was injury to a victim, I add an additional two levels. Because there was the taking of a controlled substance, I add one additional level. Because the total loss involved $1,179,000 I add an additional four levels making a total offense level for Group 1 of 32.

Group 2 consists of the Hobbs Act robbery conspiracy and attempted robberies in Queens County during the summer of 2002, Burke Avenue in August of 2002, and East 224th Street and Boston Road in November of 2003. The base offense level is 20. Because these offenses involve the discharge of a firearm by an accomplice, an additional seven levels is added. Because it involved the taking of a controlled substance, an additional level is added making a combined total offense level for Group 2 of 28.

Group 3 is Count Seven, the use of a firearm during the commission of a crime of violence resulting in murder at 194 Locustwood Boulevard on August 31, 2002. The total offense

for level for Group 3 is 43.

Group 4 is Count Eight and Thirteen, which charged Hobbs Act robbery and murder at 4385 Wickham Avenue on January 21, 2003. Here again the total offense level is 43.

Group Five is Count 15, which charged illegally dealing in firearms. The base offense level is 24. Because this offense involved the receipt of more than 25 firearms, six levels are added. Because it involved trafficking in firearms, an additional four levels are added. So the total offense level for Group 5 is 34.

Finally with respect to Group 6, the marijuana conspiracy, the total offense level is 32. Applying the multiple-unit adjustment as I did back in December of 2002, two levels are added to the highest offense level and according the combined adjusted offense level is 45.

Ms. Needham accepted responsibility and accordingly I granted her a three-level reduction, which I do so again for purposes of this calculation making her total offense level 42.

Her criminal history category is a six. So Ms. Needham's guideline range is 360 months to life in prison.

The government once again moves for a downward departure for substantial assistance. If that motion was even necessary in this proceeding, I grant it. I am not going to repeat all the details that I described in the earlier sentencing proceedings regarding her cooperation and assistance

to the government. Suffice it to say that I was the trial judge and I saw everything that went on and read everything that was put before me.

Now, originally this Court sentenced Ms. Needham principally to 360 months and lifetime supervised release concurrent with the sentences previously imposed in 04 CR 196 and 04 CR 1036. That sentence represented a very significant downward departure for substantial assistance to the government in 06 CR 911. On resentencing in March of 2017, this Court granted the government's Rule 35 motion and reduced Ms. Needham's sentencing to 160 months of imprisonment to be served consecutively to the 120-month sentence imposed in 04 CR 196 and 04 CR 1036 and lifetime supervised release.

That sentence was fashioned in such a way as to take account of a miscalculation by the BOP in how Ms. Needham's sentences were to be run. So I effectively reduced what BOP had calculated to be 36-year sentence to a 20-year sentence making Ms. Needham's current scheduled release date October 15, 2024, as I understand it.

Ms. Needham's counsel now seeks a sentence of time-served arguing that her new sentencing range of 360 months to life is significantly lower than her range in 2012, which was 660 months to life. That argument only has superficial appeal because this Court granted the government's motion for a downward departure for substantial assistance and therefore

this Court was not bound to any of the guidelines or any mandatory minimum sentence at the time I originally sentenced her.

Counsel also argues that Ms. Needham had been in continuous BOP custody for nearly 16 years and that she is, and I quote, "Trending well as an inmate subsequent to her last appearance before the Court in March of 2017." Well, 16 years is a lengthy term of incarceration and it does appeal that Ms. Needham is finally making the appropriate adjustments in her life and to incarceration and seeking to improve herself. We must all keep in mind the gravity of Ms. Needham's crimes. She was, as I said in the prior proceeding, a one-woman crime wave. She was also the mastermind behind an organized and vicious robbery crew. She knew precisely what she was unleashing when she orchestrated the home invasions of Robert DeLeon and Gary Gray. And outside of those two robberies, each of which involved a murder, Ms. Needham was involved in a multitude of other robberies that involved firearms and the threat of deadly force. She also pled guilty to trafficking in a huge number of firearms that we have no idea whose hands they fell into or what damage they've done. In short, Ms. Needham is as dangerous a person this Court has ever encountered.

Now, I've had multiple opportunities to review the defendant's personal characteristics, criminal background and the nature and particulars of her crimes. For virtually her

entire life, she demonstrated a history of antisocial behavior that is appalling in the extreme. More eventually, Ms. Needham has made genuine efforts to improve herself and curb her antisocial impulses. BOP supervisors in Florida report on her constructive efforts at rehabilitation, including her placement in the honor dorm back in July. These are very encouraging signs for the Court, and I truly hope she is on the path to returning to society, presumably in Jamaica, as a productive and law-abiding person; but the crimes for which Ms. Needham stands convicted before this Court are among the most egregious that any human being could commit and she has a further path to travel before she is reintegrative into society.

To suggest that a sentence on all of these crimes of time-served is appropriate in my view is beyond the pale here; but I do believe that a modest reduction in her sentence is appropriate to reflect her efforts at rehabilitation. While Ms. Needham and her family have undoubtedly suffered as a result of her incarceration and she's missed, as counsel's described it, the birth of grandchildren and other entirely joyous family events, she and her family can at least communicate with each other, see each other, and know that at some day they will be reunited. The murder victims and their families, however, will never be reunited at least in this life and their emotional statements still reverberate in this courtroom.

So is it against that backdrop that this Court's prepared to resentence Ms. Needham, and I would ask her to stand at this time.

Ms. Needham, I truly hope that you are on the right path. I cannot bring myself to sentence you to time-served. That would be unjust here and would not fulfill the promise of the criminal justice system and the need to ensure that fairness and justice are done. So it is my judgment that you be sentenced to a term of 154 months of imprisonment to be followed by lifetime supervision assuming you are in the United States subject to all of the it standard conditions of supervised release and the following special conditions:

First, that you submit your person and any property, residence, vehicle, papers, computer, or other electronic communications, data storage devices, cloud storage, or media and effects to a search by any U.S. Probation officer and if needed with the assistance of any law enforcement. The search is to be conducted when there is a reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by you. Failure to submit to such a search may be grounds for revocation and so you are to inform any other residence, users or interested parties that the premises or property may be subject to search pursuant to this condition.

Second, I am going to require you to obey the

immigration laws and comply with all directives of immigration authorities.

Finally, I am going to require you to participate in a mental health program approved by the Probation Office. You are to continue to take any prescribed medications unless otherwise instructed by your healthcare provider. You are to contribute to the cost of services rendered that are not covered by third-party payments if you have the ability to pay. And I authorize the release of available psychological evaluations and reports to the healthcare provider.

I am not going impose any fine on you. I am going to impose the mandatory special assessment of $1,500 in this case.

I am going to direct the government to refund to the defendant if it has been paid the $100 special assessment that I imposed on Count Fourteen, the 924(c) count, that has now been vacated.

Ms. Needham, this constitutes the sentence of this Court.

I advise you once again that you have the right to appeal. I advise you further that if you cannot afford counsel, counsel will be provided to you free of cost. Messrs Stern and Ser, have done a fine job in shepherding this matter through the Johnson proceeding to this resentencing and I am confident that they will advise you further with respect to your appellate rights.

You may be seated.

MR. STERN: Judge, can I have one moment, please.

(Pause)

MR. STERN: Thank you.

THE COURT: Anything further?

MS. KORENBAUM: Your Honor, we would ask that you reimpose the order of forfeiture that was initially imposed in this case.

THE COURT: I consider it done. I reimpose the order of forfeiture as well.

Now, I would like to do what I can to ensure that Ms. Needham is returned to the facility in Tallahassee, Florida, from which she was taken to be brought to this proceeding. I previously recommend to the Bureau of Prisons that she be housed in a warm climate because of certain health conditions. I am going to include that condition, but in this particular case I am going to include a recommendation that she be returned to FCI Tallahassee where she seems to be making the very best of her efforts at rehabilitation and earning the love and respect of the people around her.

So I think that is very important and that she be brought back there as promptly as possible and I would like counsel to advise me if that is not accomplished so that further measures can be taken to ensure that it does occur.

I would say to both sides with respect to

resentencings like this to the extent that others are going to come before me that I would certainly entertain an application to conduct the resentencing by videoconference so that Ms. Needham or other defendants are not put through the dislocation of programs that they are in to be transported back to this district.

Anything further?

MS. KORENBAUM: Nothing from the government, your Honor.

THE COURT: Anything further, Mr. Stern?

MR. STERN: No, sir.

THE COURT: Ms. Needham, this proceeding is concluded.

THE DEFENDANT: Thank you.

THE COURT: Have a good afternoon.

MS. KORENBAUM: Good afternoon your Honor.

THE DEPUTY CLERK: All rise.

o0o