UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
:
UNITED STATES OF AMERICA,              :  **ORDER DENYING MOTION**
                                       :  **FOR COMPASSIONATE**
-against-                              :  **RELEASE**
                                       :
DERRILYN NEEDHAM,                      :  06 Cr. 911 (AKH)
                                       :
                           Defendant.  :
                                       :
-------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Petitioner Derrilyn Needham moves to reduce her sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A). Needham contends that her current health conditions, the conditions of her confinement, the COVID-19 pandemic, and her efforts toward rehabilitation constitute "extraordinary and compelling" circumstances warranting compassionate release. *See* Pet'r Br., ECF No. 338. The Government opposes, arguing Needham has not demonstrated "extraordinary and compelling" reasons justifying compassionate release, and that the 18 U.S.C. § 3553(a) sentencing factors weigh against a reduction in sentence. *See* Opp'n Br., ECF No. 341. For the reasons discussed below, Needham's motion is denied.

## BACKGROUND

        In March 2010, Needham pled guilty to a sixteen-count Information as part of a cooperation agreement. Final Presentence Investigation Report ("PSR"), ECF No. 297, at ¶10. The Information covered Needham's conduct for various acts committed from 2001 to 2004, which related to Needham's involvement in a series of robberies and attempted robberies of drug dealers. *Id.* at ¶ 22. During that time, Needham leveraged a network of connections that provided her with information about people involved with drug transportation, storage, and distribution. *Id.* Needham would either provide information to her co-conspirators or participate

in the robberies themselves by acting as a lookout at the location of the robberies. *Id.* From 2001 to 2004, Needham orchestrated and participated in more than 40 robberies and attempted robberies. *Id.* at ¶ 49. On two occasions, Needham's coconspirators murdered victims of the robberies. *See id.* at ¶¶ 31, 34. In multiple instances, Needham carried a handgun when at the scene of the robberies and attempted robberies. *Id.* at ¶ 22. In addition to the robberies, Needham also engaged in trafficking firearms and distributing more than 1,000 kilograms of marijuana. *Id.* at ¶ 49.

On September 12, 2007, Needham was arrested while already serving a sentence in connection with two prior cases. *Id.* at ¶ 48. On March 10, 2010, Needham pled guilty to the Information. *Id.* at ¶ 10. At sentencing, Needham faced a Guidelines range of 660 months' imprisonment to life imprisonment. In light of her assistance to the Government through the cooperation agreement, Judge Pauley sentenced Needham to a below-Guidelines sentence of 360 months' imprisonment, to run concurrently to two other concurrent 120-month terms of imprisonment imposed for separate conduct. The Second Circuit subsequently affirmed Needham's conviction and sentence. *See United States v. Needham*, 551 F. App'x 21, 22 (2d Cir. 2014). After additional assistance to the government in 2016, Needham's sentence was reduced to 160 months, running consecutive to the 120-month terms. *See* ECF No. 283. After the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), Needham was resentenced to 154 months' imprisonment. *See generally* 2019 Sentencing Tr., ECF No. 305. On May 26, 2021, the Second Circuit again affirmed Needham's sentence. *See* ECF No. 335.

Needham is now in custody at FCI Tallahassee and her expected release date is December 29, 2023. On December 22, 2020 Needham filed a request for compassionate release with the warden of FCI Tallashassee, which was denied on March 10, 2021. On June 15, 2021,

Needham moved for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 338. Needham also has requested that her prior counsel be reappointed for consideration of the instant motion. *See* ECF No. 348. The Government opposed Needham's motion for compassionate release. *See* ECF No. 341. Subsequently, on August 3, 2021, this case was reassigned to me.

## DISCUSSION

### A. Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F.Supp.3d 613, 614 (S.D.N.Y. 2020). Section 3582 of Title 18 of the U.S. Code provides one such exception by permitting a court to modify a term of imprisonment "upon motion of the defendant" if the defendant has exhausted certain administrative requirements. 18 U.S.C. § 3582(c)(1)(A). Under these circumstances, a court may reduce the defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In so doing, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). "Application of the § 3553(a) factors requires an assessment of whether the relevant factors 'outweigh the "extraordinary and compelling reasons" warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence.'" *United States v. Daugerdas*, --- F. Supp. 3d ---, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations in original) (quoting *United States v. Ebbers*, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020)).

In the Second Circuit, the policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release, section 1B1.13 of the Sentencing Guidelines, "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). "However, courts remain free – even after *Brooker* – to look to § 1B1.13 for guidance in the exercise of their discretion." *United States v. Burman*, 2021 WL 681401, at *5 (S.D.N.Y. Feb. 21, 2021) (internal quotation marks omitted); *see also United States v. Seng*, 2021 WL 961749, at *2 (S.D.N.Y. Mar. 15, 2021).

The relevant policy statement provides that a reduction is permitted if "[e]xtraordinary and compelling reasons warrant the reduction" and "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. So far as is pertinent here, the Application Notes to that policy statement provide that a defendant can make a showing of an "extraordinary and compelling reason" by demonstrating severe medical infirmity as follows:

(A) Medical Condition of the Defendant.——

> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is——
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or

4

>> (III) experiencing deteriorating physical or mental
>> health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide
> selfcare within the environment of a correctional facility and from
> which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1. Additionally, the Notes state that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.*, Application Note 3. The moving party bears the burden of proving that extraordinary and compelling reasons exist. *See United States v. Ebbers*, 432 F. Supp. 3d 421, 426–27 (S.D.N.Y. 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *see also United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) ("[I]f the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.") (quoting *Butler*, 970 F.2d at 1026); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

### B. A Sentence Reduction is Not Warranted for Needham

Needham is unable to meet her burden to show that "extraordinary and compelling reasons" and the Section 3553(a) factors warrant reducing her sentence. To begin, Needham has failed to articulate a sufficiently extraordinary or compelling reason why her sentence should be modified. In support of her motion, Needham argues that the combination of (1) COVID-19, (2) the medical care available at FCI Tallahassee, and (3) Needham's medical history constitutes extraordinary and compelling reasons justifying release. Pet'r Br., ECF No. 338, at 5. Specifically, Needham claims she suffers from multiple medical conditions— including leukopenia, fibromyalgia, cysts, arthritis, vertigo, pancolitis, Reynaud's disease, high blood pressure, IBS, and spina bifida—that justify her release. *Id.* at 2, 5. While the

5

Government acknowledges that "COVID-19 is undoubtedly serious," it notes that Needham "had an asymptomatic case [of COVID] and repeatedly denied experiencing any symptoms." Opp. Ltr., ECF No. 341, at 4. Additionally, the Government represents that Needham has been vaccinated against COVID-19 and that Tallahassee FCI has taken significant steps to control COVID-19. *Id.* at 4–5.

Serious as the COVID-19 pandemic is, Needham's situation does not constitute an extraordinary and compelling circumstance. I agree with other courts in this circuit that have found "the risk of COVID-19 for a vaccinated individual"—even one with Needham's medical history—"is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons after [she] has been vaccinated." *United States v. Jones*, 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021); *see also United States v. Fernandez*, 2021 WL 5304320, at *3 (Nov. 15, 2021) (finding vaccination sufficient to guard against risk of COVID, even in light of the Delta variant); *United States v. Santana*, 2021 WL 1819683, at *2 (S.D.N.Y. May 6, 2021) (no extraordinary circumstances due to COVID because of the efficacy of vaccines). Notably, only one of the medical conditions Needham identifies—high blood pressure—is included in the CDC's list of conditions that may lead to a severe COVID case. *See* People at Increased Risk, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited Dec. 1, 2021).

I consider that Needham had been diagnosed with a number of serious medical conditions. *See id.*; Pet'r Br. at 2, 5. Given that Needham has already contracted COVID and received two doses of the Moderna vaccine, the risk to her is sufficiently limited. While "[t]he current COVID-19 pandemic is an unprecedented worldwide catastrophe . . . it does not warrant

6

the early release of sentenced inmates in federal prisons convicted of serious, dangerous offenses, like [Needham], whose medical conditions and risk of contracting the virus cannot be deemed 'extraordinary and compelling.'" *United States v. Mood*, 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) (denying release to 53-year-old with diabetes, hypertension, and obesity where "[t]here is no question that [the defendant] has health issues, but his condition is stable and has been effectively managed by routine monitoring and medication").

But even setting aside, without deciding, the Government's representations that the Tallahassee facility has made major strides in its response to the virus,[1] I cannot conclude that release is proper. Weighing the Section 3553(a) factors, I find that reducing Needham's sentence would fail to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment," or "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). Needham argues that she has taken responsibility for her actions and used her time in prison to rehabilitate. While I commend such efforts, rehabilitation through participation in prison programs and religious organization does not constitute an "extraordinary and compelling" justification for release. *See United States v. Torres*, 2021 WL 1131478, at *3 (S.D.N.Y Mar. 24, 2021) (finding enrollment in GED and other courses were not extraordinary and compelling basis for relief); *United States v. Reyes*, 2020 WL 5518483, at *3 (S.D.N.Y. Sept. 14, 2020) (finding completion of "dozens" of BOP programs and GED, without more, did not "support the extraordinary and compelling relief of compassionate release").

---

[1] The Government represents that the Bureau of Prisons and FCI Tallahassee have "made significant efforts to respond to, and to protect its inmates and staff from, COVID-19." Opp'n Ltr. at 5. As of July 2021, FCI Tallahassee had only one active case of COVID-19. *Id.* As of this writing, FCI Tallahassee does not appear to have any active cases. *See* COVID-19, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Dec. 12, 2021).

Further weighing against release is the fact that the crimes here⸺a series of robberies, two of which involved a murder, and trafficking in firearms and controlled substances⸺were most serious. At resentencing in 2019, Judge Pauley remarked that although "Needham has made genuine efforts to improve herself and curb her antisocial impulses" she was "as dangerous a person [as] this Court has ever encountered." 2019 Sentencing Tr. at 15:22–16:4. Needham's robberies and related crimes spanned multiple years. PSR at ¶¶ 22–44. Needham was instrumental in facilitating the many of these robberies and provided key information about robbery targets. *Id.* at ¶¶ 22. As Judge Pauley noted at re-sentencing, Needham was the "mastermind behind an organized and vicious robbery crew." 2019 Sentencing Tr. at 15:13–14. For the same reasons that necessitated Needham's lengthy sentence, which Judge Pauley articulated and I incorporate by reference herein, I find that modifying her term of incarceration would disserve the above important sentencing factors.

### C. Appointment of Counsel

In her letter dated September 14, 2021, Needham requested to have her previous attorney appointed as counsel for my consideration of her motion for compassionate release. ECF No. 348. As discussed above, it is readily ascertainable from the record that Needham is not entitled to a reduction in sentence, and I decline to appoint counsel. *See United States v. Piña*, 2021 WL 364192, at *1 (S.D.N.Y. Feb. 3, 2021) (citing *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986); *United States v. Myers*, 524 F. App'x 758, 759 (2d Cir. 2013)).

## CONCLUSION

In sum, Needham's motion to reduce her sentence and her motion to appoint counsel are denied. The Clerk of Court shall terminate the open motions (ECF Nos. 338, 348).

SO ORDERED.

Dated:  January 3, 2022  /s/ Alvin K. Hellerstein
New York, New York ALVIN K. HELLERSTEIN
United States District Judge